Filippo Marchino, Esq. (SBN 256011)
FM@XLAWX.com
Richard W. Davis, Esq. (SBN 161858)
RD@XLAWX.com
Thomas E. Gray, Esq. (SBN 299898)
TG@XLAWX.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Plaintiff Blake Stanley
and On Behalf of All Others
Similarly Situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAKE STANLEY, an Individual, on Behalf of Himself and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> Dr. Ing. h.c.F. PORSCHE AG, a German corporation, and PORSCHE CARS NORTH AMERICA, INC., a Delaware corporation, <br><br> Defendants. | Case No.   2:25-cv-5916 <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

1.    Plaintiff Blake Stanley ("Mr. Stanley" or "Plaintiff") brings this class action suit against Porsche Cars North America, Inc., a Delaware Corporation, and Dr. Ing. h.c.F. Porsche AG, a German Corporation, to recover damages owed to Plaintiff and others similarly situated.

## PARTIES

2.    Plaintiff Blake Stanley, is and at all times relevant herein was, a resident of the State of California.  He also is a citizen of the State of California.

3.    Defendant Porsche Cars North America, Inc. ("Porsche NA") is a Delaware Corporation with its principal place of business in the State of Georgia.

4.    Defendant Dr. Ing. h.c.F. Porsche AG ("Porsche AG") is a German Corporation, with its principal place of business in Stuttgart, Germany.

5.    Defendant Porsche NA is a wholly owned subsidiary of Defendant Porsche AG.

6.    Defendants Porsche NA and Porsche AG are referred to herein collectively as "Porsche" or "Defendants."

7.    Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

8.    Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of their primary wrongdoing and realized that their conduct would substantially assist the accomplishment of the wrongful conduct, wrongful

**CLASS ACTION COMPLAINT**

goals, and wrongdoing.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because there are over 100 members of the proposed class, at least one member of the proposed class has a different citizenship from a defendant, and the total matter in controversy exceeds $5,000,000.

10.    Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because Defendants are subject to the Court's personal jurisdiction in this judicial district.

## I.    FACTUAL ALLEGATIONS

### A.    The Porsche Macan

11.    The Porsche Macan (Codenamed as "Type 95B") is a five-door luxury crossover SUV manufactured by Defendant Porsche AG since 2014.

12.    It is built and assembled in Leipzig, Germany by Defendant Porsche AG and distributed in the United States by Defendant Porsche NA.

13.    The production version of the Macan was first unveiled at the 2013 Los Angeles Auto Show held in California. European models went on sale in the spring of 2014 while US models arrived at US dealerships in late spring 2014 as 2015 model year vehicles.

14.    The Macan range sold in the North American market consists of several variants, including the Macan, Macan Sport Edition, Macan S, Macan GTS and the Macan Turbo. Since 2014, the year the Macan was launched, Porsche has sold over 107,000 Macan vehicles in the United States. In the calendar year 2014, Porsche sold 7,241 Macan vehicles; in the calendar year 2015, Porsche sold 13,533 Macan vehicles; in the calendar year 2016, Porsche sold 19,332 Macan vehicles; in the calendar year 2017, Porsche sold 21,429 Macan vehicles; in the calendar year 2018,

3

Porsche sold 23,504 Macan vehicles; and in the calendar year 2019, Porsche sold 22,667 Macan vehicles. To this day, the Porsche Macan range represents the single best-selling model Porsche has ever sold in the United States.

15.    In the United States, for model years 2015 to 2018, there were three different variants of gasoline engines available on the Macan platform:

- a 2.0 liter turbocharged inline "I4" 4-cylinder engine powering the Macan and Macan Sport Edition variants;

- a 3.0-liter twin-turbocharged "V6" 6 cylinder (with the cylinders mounted in two banks of three cylinders, forming a "V" shape) powering the Macan S and Macan GTS variants;

- a 3.6-liter twin-turbocharged "V6" 6 cylinder (with the cylinders mounted in two banks of three cylinders, forming a "V" shape) powering the Macan Turbo variant.

For some of the engines in the Macan range, while maintaining identical components, Porsche provides two different outputs of power. For example, the 3.0 V6 engine powering the Macan S and Macan GTS, can produce, respectively, 335 bhp when in the Macan S and 355 bhp when in the Macan GTS. This is achieved primarily through engine mapping and electronic engine management, meaning that the engines are identical to one another, even if their output is different.

16.    Porsche markets the Macan as a "sports car" in its brochures and plays up Porsche's racing heritage with such claims that "Each one a genuine Porsche—from design and driving dynamics to equipment specification. From our dynamic entry level model to the ultra sporty S variant and the striking GTS model to the Turbo, which sets performance standards in its vehicle class."[1]  The brochures claim that "All Macan models were developed, tested and built in keeping with the Porsche

---

[1] All brochure quotations come from the model year 2017 Macan brochure.

**CLASS ACTION COMPLAINT**

philosophy. That's where we take sporty style and performance from the racetrack and inject them into everyday driving."  In fact, it boldly claims that the Macan is "the first sports car among compact SUVs."

17.   *Superior* performance and handling are key selling points in the brochures.   The brochures trumpet the Macan's "considerable agility" and emphasize the "precision and performance" of its suspension, which provides "the driving precision and performance typical of any Porsche."  The suspension "is tuned for sporty performance by default."  Likewise, they state that all of Porsche's engines are characterized by their "impressive performance and high efficiency."

18.   Consistent with the Macan's high performance image, Porsche heavily emphasizes the performance figures of the Macan.  In the case of the Macan S Plaintiff purchased, Porsche included the following in the brochure:



19.   Similar figures were provided for the other versions of the Macan in the brochure.  In the case of the Macan S, Porsche states the following in its brochure: "High performance, on the other hand, is something that the Macan S would never do without. Its 3.0-liter twin-turbo V6 engine generates 340 horsepower and helps it to sprint from 0 to 60 mph in only 5.2 seconds. Top track speed is 156 mph. Figures to raise the hairs on the neck of any sports car enthusiast."

**CLASS ACTION COMPLAINT**

20.   In addition to superior performance, Porsche emphasizes in its brochures that the Macan's emissions "are minimized for the protection of the environment" and that "the fuel tank also feature[s] multilayered construction in order to make everything as impermeable as possible."  Further, throughout the brochures, Porsche claims exceptional fuel efficiency for the Macan.  It emphasizes that the technology incorporated into the Macan results in "Greater agility with increased dynamic performance—and lower fuel consumption."  In fact, the steel spring suspension (which is present in Plaintiff's Macan S) is advertised in the brochure as follows: "Not only does it fulfill exacting requirements for performance and driving pleasure, it contributes to enhanced driving dynamics, lower fuel consumption and increased ride comfort." The brochures state the fuel economy for each version of the Macan. For Plaintiff's Macan S, it was listed as 17 mpg city, 23 mpg highway, and 19 mpg combined.

21.   Porsche's brochure advertises that the "The integrated dry-sump lubrication of the V6 gasoline engines guarantees *a reliable supply of oil in all driving situations*. The oil reservoir is located directly inside the engine, which saves on space and weight. An electronically controlled oil pump provides the correct amount of oil as and when needed. Optimized for sporty driving, it ensures optimal engine lubrication even in extreme situations." (Emphasis added.)

22.   Porsche also represents the Macan to be low maintenance, with brochures stating that "Long-life and hard-wearing materials *reduce maintenance items to a minimum*." (Emphasis added.)

23.   Porsche has made these and similar representations, throughout the entire time the Macan has been sold, in brochures, on its websites, and elsewhere, as a concerted effort to portray the Macan as a high performance, low maintenance, and dependably reliable SUV.

24.   As will be explained in greater detail below, all of the Macans sold in the United States, irrespective of trim level or engine, suffer from at least one of two

**CLASS ACTION COMPLAINT**

distinct sets of defects that will require that each Macan be repaired multiple times during its useful life at the expense of the vehicle's owner.

25.    All current and former owners and lessees have experienced at least one of these problems while operating their Macans, even if not aware of the defects. These defects have placed drivers, their vehicles, and persons and property in immediate danger by both degrading the stability of the vehicle as well as leaking fluids from the engine. Additionally, these defects have caused owners and lessees to sustain significant economic damages.

## B.    Defect #1 - Engine Leaks & Porsche's Concealment Efforts

26.    Porsche uses only Porsche engines, which it designed and manufactured, in the Macan line of vehicles it manufactures and sells.  Because of design decisions made by Porsche, two of the engine variants mentioned above, the 3.0 and 3.6 liter "V6" engines, found in the 2015-2018 model year Macans, suffer from a common design flaw that affects the seal between the engine block and the Timing Chain Cover, resulting in engine oil leaks.

27.    The above shall be collectively referred to herein as the "**Engine Defect**" or "**Engine Leak**".

28.    The Engine Defect results in a constant leakage of engine oil, exposing the engine and engine components (including, but not limited to, the serpentine belt, the undercarriage, the engine block, the alternator, etc.), to used engine oil and the corrosive dirt and grime that it attracts. This loss of oil is experienced by all purchasers and lessees of Macans that are equipped with the 3.0 and 3.6 liter "V6" engines, found in the 2015-2018 model year Macans.  Due to the nature of the defect, it is inevitable that these Macans, will develop a leak within a short time of production, meaning that all vehicles suffered from the defect before they left Porsche's New Car Limited Warranty period or the lease period.

29.    The loss of the oil is copious enough to drip off the engine.

7

30.    Repairing the Engine Leak is not possible. Mitigating the leak, on the other hand, is both expensive and time consuming because, for it to be done properly, it requires an "engine out" repair, meaning the engine has to be removed from the vehicle to perform the repair.  Thus, in addition to the cost of parts, there are significant labor costs involved and the entire repair process takes several days if not weeks to schedule and complete.

31.    Rather than find an engineering solution to the Engine Leak or use an alternative design that would not suffer from this defect, Porsche instead opted to cover up the problem so that purchasers and lessees of its luxury high performance vehicles would not realize that their automobiles were leaking oil when they were still relatively new. The Macan features a "splash guard" on the underside of the engine.  Normally manufacturers create splash guards out of plastic and use them to prevent water and road debris from entering the engine bay from underneath the vehicle.  The Macan's splash guard is different.  It is shaped like an under-engine tray.  Instead of being made of the traditional polycarbonate plastics other similar vehicles use, it is made of a highly absorbent fibrous material that can absorb substantial amounts of oil, thereby preventing the oil leak from dripping onto the ground beneath the car. The Macan's splash guard thus prevents purchasers and lessees of the Macan from noticing the Engine Leak until the leak has been present for a significant amount of time and has progressed to the point that the splash guard can no longer absorb all of the oil leaking from the vehicle.

32.    In essence, rather than fix the engine problem causing the Engine Leak, Porsche opted to engineer a diaper for the car to hide the problem.  This diaper, in effect, conceals the problem until the vehicle's warranty has expired and Porsche therefore avoids the costs associated with repairs, allocating these to the unsuspecting purchaser or lessee. Additionally, Porsche turns this into a profit, as the repairs will require Porsche parts that Porsche will happily sell.

33.    This diaper technique is known or referred to as the "Rolls-Royce"

**CLASS ACTION COMPLAINT**

diaper trick, named after a practice that Rolls-Royce employed in the 1960s to prevent customers from discovering how much oil their vehicle's engine was losing. By placing diapers under the engine and concealing them with a plastic tray, the manufacturer was able to keep driveways clean, and customers in ignorant bliss.

34.    Ironically, Porsche's solution is essentially the same as the "engine leak diaper" products sold by third parties and intended to be used on commercial vehicles so that they may comply with pollution regulations relating to oil and petrochemical leaks without having to undergo expensive engine repairs.  Such patchwork solutions would not meet the expectations of Porsche consumers who pay upwards of $100,000 for these luxury vehicles.

35.    Although Porsche is aware of these Engine Leak issues, on information and belief, it instructs mechanics and technicians to do nothing about them during routine maintenance.

36.    Based on Porsche's representations in the USA Warranty and Maintenance schedules provided with the Porsche Macan, the Macan's engine, regardless of version, is intended and reasonably expected to last for the useful life of the vehicle, at least 160,000 miles, or 12 years, without the need for repair or replacement. According to the Macan's maintenance schedules, the engine in the Macan is expected to last beyond the warranty periods and should not require anything aside from ordinary maintenance during the useful life of the vehicle. For example, the Porsche Macan maintenance checklist (for all models of Macan) does not require maintenance of the engine seals within 160,000 miles (the highest number of miles shown in the maintenance checklist) or 12 years (the longest period of time shown in the maintenance checklist). Thus, the Engine Leak in the Macan occurs prematurely and before any reasonable consumer would expect the failure of the seals to occur.

37.    Relying on the fact that (i) most Macan owners will not service their own engine, and hence not see first-hand the leak, as well as the fact that (ii) most Macan

**CLASS ACTION COMPLAINT**

owners have their engines serviced at complicit Porsche dealerships which are instructed to consider the leaks "normal", Porsche engaged in a practice of obfuscating the truth. Further, the technicians at the Porsche dealerships, who receive instruction from Porsche on the proper repair and maintenance of the Macan, overlook the Engine Defect and parts damaged by the Engine Defect and do not inform customers of these issues. On information and belief, the reason they fail to do so is because of instruction by Porsche.

38.   Porsche engaged in this behavior with the express and intentional goal of preventing Macan purchasers and lessees from discovering the Engine Defect and the associated leaks, and hence actively concealing their damaged goods.

39.   Porsche concealed the oil leak problem for several reasons. First, it was cheaper to place something to catch a leak than it would be to use a comparable engine that would not leak or engineer a solution for the existing engine.

40.   Second, if consumers knew that their vehicles were beginning to leak oil shortly after purchase or lease, they would not purchase or lease the vehicle. At the same time, if word spread about the leak, *prospective* purchasers and lessees would be dissuaded from purchasing or leasing Porsches as well.

41.   Third, concealing the Engine Leaks allowed Porsche to avoid dealing with the thorny issue presented by the vehicle's warranty. Although the vehicles begin leaking oil while they are under warranty, because the defect manifests early in the life of the cars, the splash guard absorbs the oil and conceals the problem from purchasers and lessees until after the warranty has expired. The warranty only covers repairs of the vehicle "if it fails to function properly as designed during normal use."

42.   Additionally, on information and belief and based on the experience of Plaintiff and other class members, the Engine Leak repairs will not be covered by Porsche's New Car Limited Warranty because the Engine Leak defect results from the design of the engine and the car is therefore functioning "as designed." Thus, if

10

consumers became aware of the defect, they would take their vehicles to dealerships for repair, only to learn that the repairs would cost thousands of dollars and would not be covered by the warranty. This is information that, if disseminated, would deter others from purchasing Porsches and would deter the purchasers and lessees from buying or leasing Porsches in the future.

43.    This action hence in part arises from Porsche's failure, despite its longstanding knowledge of the material engine design defects discussed hereinabove, to disclose to Plaintiff and other similarly situated consumers that the Macan engines had inherent design defects that resulted in continuous and harmful oil leakage which would ultimately require expensive and time-consuming engine repairs.

44.    The Engine Defect poses a number of related safety hazards.  First, by virtue of the fact that the "diaper" absorbs the leaking oil, the lower part of the Macan's engine will, over time, become increasingly saturated with oil.  Unlike in other vehicles, where the oil would simply drip onto the ground, in the Macan it is effectively trapped immediately below the engine.  Because of the proximity to the engine and exhaust components, the oil is at risk of combusting due to heat from the engine, posing an obvious safety hazard to the occupants of the Macan.  Further, the pooled oil is at risk of igniting due to sparks that may be generated by the Macan's normal operation and is also vulnerable to ignition in car accidents (meaning the Macan is at greater risk of catching fire in an accident than other vehicles).

45.    Thus, from the moment that the Engine Defect manifests itself in a particular Macan, it poses an increased safety hazard.  The hazard is not contingent on some other occurrence.

**CLASS ACTION COMPLAINT**



Picture Showing a Macan's "diaper" Saturated in Engine Oil.

46.    In addition to being a fire hazard, the leaking oil causes damage to several parts of the Macan.  First, loss of oil results in engine damage (which in itself poses a fire risk), but could also cause engines to unexpectedly stall, rendering the Macan immobile, increasing the risk of a crash.

47.    Further, the oil also degrades rubber and plastic components of the Macan, causing the eventual failure of these components, which results in problems ranging from engine failure to electrical system failure, all of which are fundamental to the basic operation of and safety of the vehicle.

48.    For example, because of the electrical power steering rack's location, it becomes coated in oil.  This device is a driver aid that assists the driver in the operation of the steering and, once covered in oil, its performance and reliability decreases, posing both a safety and performance issue.  The system is not meant to be covered in oil, and is not serviceable, so once it has been coated in oil, it needs to be replaced.  The cost of the part is $2,797.68 and the labor is another $1,250.

**CLASS ACTION COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    Picture of a Macan Without "diaper" Showing Electrical Steering Box Soaked
18    in Motor Oil.

19

20    49.    The electrical connectors in the Macan also become coated in oil due to
21    the Engine Defect.  Consequently, the vehicle is subject to erroneous readings from
22    the onboard electronics and sensors as a result of oil seeping within the connectors.
23    The oil seeping in is not conductive and adds capacitance to the connections. This
24    capacitance alters the signals transmitted and received by the electronics and
25    sensors. This ultimately affects the performance and reliability of the vehicle,
26    including an increase in fuel consumption and corresponding decrease in fuel
27    economy.

28

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18



19   Detail of a Macan Engine Showing Electrical Connectors Soaked in Motor Oil.

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**

1

2

3   //

4



Detail of a Macan Engine Showing Electrical Connectors Soaked in Motor Oil.

50.   The oil leak also splashes onto the alternator (the system that creates electricity for the vehicle) and creates a poor contact between the slip rings and the carbon brushes in it.   Because the brushes inside the alternator only carry a small current, any substance that can cause high resistance (like motor oil because it is an insulator) will interfere with the working of the alternator.   Additionally, because the Macan's alternator is air cooled through venting holes in the alternator itself, the leaked oil freely enters the alternator and coats several parts that affect not only the performance of the alternator, but also the cooling of the unit.   This results in

15

1    overheating, premature wear and tear and failure, and poses a fire hazard.



Detail of a Macan Engine Showing Alternator Soaked in Motor Oil.

51.    Oil leaking onto the drive belt, which powers various engine components including the alternator, causes slippage which negatively affects the charging rate of the alternator as well as the performance of the entire engine as a working unit, thereby affecting the power output of the engine and the fuel economy of the Macan.

52.    An alternator failure while the Macan is being driven will cause the engine to shut down.   This will remove all hydraulically assisted braking and electrically assisted steering.   Every Macan is susceptible to this problem's sudden manifestation.

**CLASS ACTION COMPLAINT**



Detail of a Macan Engine Showing Motor Oil Spray from the Serpentine Belt.

53. Additionally, as a result of the vehicle's inability to fully charge its electrical systems while being operated, the gradual partial failure of the alternator results in a drop in performance, including a worsening of the fuel economy and power output. The gradual failure and inability to fully charge the Macan also interferes with the operation of its lights, which poses a safety hazard at night.

54. Further, the Engine Defect results in several of the mechanical fasteners found in the engine bay (nuts, bolts, clips, clamps, etc.) becoming coated in oil, diminishing their holding capability. This leaves the Macan vulnerable to having parts spontaneously fall apart while being driven, resulting in decreases in performance and reliability, posing an obvious safety hazard.

55. Independent of the safety threat posed by the Engine Defect, the Engine Defect goes to the central function of the Macan. Not only does a defective engine that is at risk of failure undermine the purpose of a vehicle (i.e., a reliable form of

17

transportation) but it also undermines the entire purpose of a consumer purchasing a *Macan*. The Macan's Porsche engine and associated performance is what differentiates it from other SUVs on the market and is why consumers are willing to pay a premium for it over other SUVs. Further, the leaking oil is a type of emission directly at odds with the selling point of the Macan as being environmentally friendly. In addition, the Engine Defect means that, contrary to the Macan's selling point as being low maintenance and reliable, it is in fact, as a result of the defect, high maintenance, unreliable, delivers inferior performance, and is expensive to maintain.

56. Notably, the loss of motor oil due to the Engine Defect means that the Macan requires motor oil toppings in-between the scheduled maintenance. In other words, even with low use of the vehicle, after approximately 5,000 miles (Porsche recommends oil services every 10,000 miles), the Macan will alert the driver that it requires emergency maintenance.



Picture of a Macan Showing a Warning to Refill Oil After Only 5,463 Miles from the Last Oil Change.

Moreover, the Engine Defect results in a loss of horsepower and torque in the Macan and results in a decrease in fuel economy. Among other things, the oil pump fails to provide the appropriate amount of oil to the engine.

**CLASS ACTION COMPLAINT**

### C.    Defect #2 - The Suspension Defect & Concealment Efforts

57.    To maximize profits, the Porsche Macan line of vehicles is built on a platform that is shared on a multitude of other vehicles, including vehicles from Volkswagen ("VW") and Audi.

58.    The Volkswagen Group MLB platform, announced in 2012, is a shared modular construction for longitudinal, front-engine automobiles in the VW family. While originally developed by Audi, and first introduced on the Audi A5, it was subsequently introduced to the Audi A4, Audi Q5, Audi A8, Audi A7, Audi A6, and, finally, the Porsche Macan.

59.    Consequently, the Porsche Macan shares its platform and wheelbase with the first-generation Audi Q5 (made by Audi from 2008 to 2017). While the powertrain (engine and transmission) of the Macan is mostly unique to Porsche, about one-third of the Macan is otherwise identical to the Q5 vehicle that it is based on.

60.    Notably, the Macan shares with the Audi Q5 its suspension configuration and parts, including the front upper control arms and associated bushings at issue in this complaint.

61.    The parts in question, while they carry a unique Porsche Stock Keeping Unit (SKU) number within the Porsche inventory, are actually identical and interchangeable with those found on the Audi Q5 and in fact bear the markings of not Porsche, but Audi.

**CLASS ACTION COMPLAINT**

62. For example, the Macan Front Left Upper Forward Suspension Control Arm bears Porsche part number 8K0407505P, but it is clearly manufactured for Audi, as it bears the Audi logo.



63. This part, 8K0407505P fits all Porsche Macan models (16 variants of them) starting from model year 2015. However, this part was not actually engineered for use in the 440 horsepower Macan, which Porsche defines as "a compact SUV that inextricably combines sportiness, design and everyday practicality," but rather for use in the 270 horsepower Audi Q5. In fact, the part was first used by Audi in 2009 and was since fitted to at least another 4 Audi models and 70 variants of these models, manufactured between 2009 and 2017, including the following:

- Audi A5 2.0L A/T Quattro Base Coupe - 2010, 2011

- Audi A5 2.0L A/T Quattro Cabriolet Convertible - 2010, 2011, 2012

- Audi A5 2.0L CVT FWD Cabriolet Convertible - 2010, 2011, 2012

- Audi A5 2.0L M/T Quattro Base Coupe - 2010, 2011

- Audi allroad 2.0L FLEX A/T Premium Plus Wagon - 2013, 2014, 2015, 2016

**CLASS ACTION COMPLAINT**

- Audi allroad 2.0L FLEX A/T Premium Wagon - 2013, 2014, 2015, 2016

- Audi allroad 2.0L FLEX A/T Prestige Wagon - 2013, 2014, 2015

- Audi Q5 2.0L A/T Premium Plus Sport Utility - 2011, 2012

- Audi Q5 2.0L A/T Premium Sport Utility - 2011, 2012

- Audi Q5 2.0L ELECTRIC/GAS A/T Hybrid Prestige Sport Utility - 2013, 2014, 2015, 2016

- Audi Q5 2.0L FLEX A/T Premium Plus Sport Utility - 2013, 2014, 2015, 2016, 2017

- Audi Q5 2.0L FLEX A/T Premium Sport Utility - 2013, 2014, 2015, 2016, 2017

- Audi Q5 3.0L TDI V6 DIESEL A/T TDI Premium Plus S-Line Sport Utility - 2016

- Audi Q5 3.0L TDI V6 DIESEL A/T TDI Premium Plus Sport Utility - 2014, 2015, 2016

- Audi Q5 3.0L TDI V6 DIESEL A/T TDI Prestige S-Line Sport Utility - 2016

- Audi Q5 3.0L TDI V6 DIESEL A/T TDI Prestige Sport Utility - 2014, 2015, 2016

- Audi Q5 3.0L V6 A/T Premium Plus Sport Utility - 2013, 2014, 2015, 2016, 2017

- Audi Q5 3.0L V6 A/T Prestige Sport Utility - 2013, 2014, 2015, 2016, 2017

- Audi Q5 3.2L V6 A/T Premium Plus Sport Utility - 2009, 2010, 2011, 2012

21

**CLASS ACTION COMPLAINT**

- Audi Q5 3.2L V6 A/T Premium Sport Utility - 2009, 2010

- Audi Q5 3.2L V6 A/T Prestige Sport Utility - 2009, 2010, 2011, 2012

- Audi S5 3.0L V6 A/T Cabriolet Convertible - 2010, 2011, 2012

64.    The suspension components, including the example here above, are not designed specifically for the Macan and, as a result of the engine, gearbox[2], all-wheel drive[3], transfer case, suspension tuning, and exterior body being all unique to the Macan, as well as all dimensions increasing[4], the Macan line of vehicles places loads on the suspension components that are above and beyond those expected by an Audi Q5.

65.    The result is that these components, designed for lighter loads and applications, will inevitably prematurely fail when employed for use in the Macan. Chief amongst these components are the front upper control arm bushings.

66.    In a car, bushings have a function similar to cartilage in joints of the human body. Worn or damaged cartilage results in bone-on-bone contact and discomfort. Worn or damaged bushings causes loose joints, metal on metal contact, noises and vibrations.

67.    Control arm bushings usually consist of an outer metal sleeve, a durable rubber or polyurethane bushing, and an inner metal sleeve. Control arm bushings are important for driving comfort and handling as they cushion the suspension system, which reduces noise and vibrations, and also provide a softer ride over

---

[2] The eight-speed automatic from the Audi Q5 is replaced by a Porsche seven-speed Porsche Doppelkupplungsgetriebe ("PDK"), which translates to Porsche double-clutch transmission.

[3] The quattro all-wheel drive system from the Audi Q5 is replaced by an electrical Haldex system.

[4] The Macan line is heavier (200 lb), longer (1.7 in) and wider (1.4 in) than its sister Audi Q5.

**CLASS ACTION COMPLAINT**

bumps. Bushings can flex and move while retaining stiffness and the ability to return to their original shape and position.

68.    The heavy loads, the operating environment, and the stress of frequent movement experienced in the Macan, when compared to the models the parts were intended for, cause these control arm bushings to prematurely deteriorate.  This defect is referred to hereinafter as the "**Suspension Defect**" or "**Failing Bushings**."

69.    Based on Porsche's representations in the USA Warranty and Maintenance schedules provided with the Macan, the Macan's suspension system, regardless of version, is intended and reasonably expected to last for the useful life of the vehicle, at least 160,000 miles, or 12 years, without the need for repair or replacement. For example, the Porsche Macan maintenance checklist (for all models of Macan) does not require maintenance of the bushings within 160,000 miles (the highest number of miles shown in the maintenance checklist) or 12 years (the longest period of time shown in the maintenance checklist). Thus, the Suspension Defect in the Macan occurs prematurely and before any reasonable consumer would expect the failure to occur.

70.    The Suspension Defect is experienced by all purchasers and lessees of the Macan.  Due to the nature of the defect, it is inevitable that each vehicle will develop the failing bushings within a short time of purchase or lease, meaning that all vehicles suffered from the defect before they left Porsche's New Car Limited Warranty period or lease period.

71.    Repairing the Failing Bushings is relatively expensive and time-consuming as it requires moderate work on the front end of the vehicle.

72.    Rather than find either an engineering or manufacturing solution to the Failing Bushings or use an alternative design that would not suffer from this defect, Porsche instead opted to cover up the problem so that purchasers and lessees of its luxury high performance vehicles would not realize that their automobiles would soon have suspension parts failing.

**CLASS ACTION COMPLAINT**

73.    Although Porsche is aware of these Failing Bushings issues, on information and belief, it has previously instructed mechanics and technicians to do nothing about it during routine maintenance while the vehicle is under warranty.

74.    Porsche concealed the Failing Bushings problem for several reasons. First, if consumers knew that their vehicles were prone to a hidden failure shortly after purchase, they would not purchase or lease the vehicle.

75.    Second, concealing the problem, by not informing users of it, allowed Porsche to avoid dealing with the thorny issue presented by the vehicle's warranty. Although these components inevitably fail while the vehicles are under warranty, a vast majority of consumers will not detect it until after the warranty has expired. The warranty only covers repairs of the vehicle "if it fails to function properly as designed during normal use."

76.    Additionally, on information and belief and based on the experience of class members, the Failing Bushing repairs will not be covered by Porsche's New Car Limited Warranty because the Suspension Defect results from the design of the suspension and the car is therefore functioning "as designed."  Thus, for the consumers who were aware of the defect, and would take their vehicles to dealerships for repair, they would learn that the repairs would cost a few thousand dollars and would not be covered by the warranty, information that, if disseminated, would deter others from purchasing or leasing Porsches. This information would also deter the purchasers and lessees from buying or leasing Porsches in the future.

77.    The Suspension Defect also poses an inherent safety danger to the passengers and operators of the Macan. A problematic control arm assembly will produce a few symptoms. One of the first symptoms commonly associated with bad control arms is steering wheel vibrations. When the Suspension Defect manifests itself, it will cause wheel shimmy, which may cause vibrations that are felt by the driver. The vibrations may increase as the vehicle accelerates and smooth out once the vehicle is traveling at speed. Another symptom commonly associated with the

24

**CLASS ACTION COMPLAINT**

Suspension Defect is steering wandering. The Suspension Defect causes the vehicle's steering alignment to shift, which in turn causes the steering to pull to the left or right when traveling down the road. This will require a constant correction from the driver to steer the vehicle straight. Clunking noises are another symptom of the Suspension Defect. When the bushings develop excessive play or looseness, this will cause them to knock during takeoff or when the vehicle is traveling over rough terrain. The clunking sound will continuously get louder as the component wears or until it eventually breaks.

78.    The control arms on a vehicle are a very important suspension component as they are the component that links the spindle, hubs, and wheel to the vehicle's chassis. When they fail, as with the manifestation of the Suspension Defect, it can cause problems for the vehicle that will compromise not only the comfort, but also the handling and, therefore, safety of the vehicle.

79.    Due to the nature of these issues, once the Suspension Defect has manifested in a Macan, it also poses a safety hazard.  The hazard is not contingent on some other occurrence.

80.    As with the Engine Defects, independent of the safety threat posed by the Suspension Defect, the Suspension Defect itself goes to the central function of the Macan.  Not only does a defective engine that is at risk of failure undermine the purpose of a vehicle (i.e., a reliable form of transportation) but it also undermines the entire purpose of a consumer purchasing a *Macan*.  The Macan's suspension and associated handling is what differentiates it from other SUVs on the market and is why consumers are willing to pay a price premium for it over other SUVs.  In addition, the Suspension Defect means that, contrary to the Macan's selling point as being low maintenance and reliable, it is in fact, as a result of the defect, high maintenance, unreliable, delivers inferior performance, and is expensive to maintain.

**CLASS ACTION COMPLAINT**

#### D.     Porsche's Knowledge of the Defects

81.     Porsche wrongfully and intentionally concealed both sets of defects (Engine and Suspension Defects affect the engine seals and the suspension bushings respectively, hereinafter sometimes collectively referred to as the "Subject Components") which can and do routinely fail, forcing Plaintiff and members of the Classes (defined herein below) to incur out of pocket costs to repair or replace the Subject Components with, in some cases, repairs costing thousands of dollars.

82.     Knowledge and information regarding the aforementioned defects were in the exclusive and superior possession of Porsche and its dealers, and that information was not provided to Plaintiff and members of the Classes. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Porsche's network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, individual consumer complaints that Porsche received, and testing performed in response to these consumer complaints, *inter alia*, Porsche was aware (or should have been aware) of the premature failure of the engine seals and control arm bushings in the Macan, and yet fraudulently concealed the defect and safety risk from Plaintiff and members of the Classes. Porsche knew, or should have known, that the Engine Leak and Suspension Defect were material to owners and lessees of the Macan and were not known or reasonably discoverable by Plaintiff and members of the Classes before they purchased or leased Macans.

83.     Notwithstanding Porsche's exclusive and superior knowledge of the aforementioned defects, Porsche never disclosed to Plaintiff and members of the Classes that the defects existed or that drivers and occupants of the Macan are at risk. Notwithstanding the fact that the Subject Components in the Macan should operate normally in vehicles for at least 160,000 driven miles, or 12 years, if not longer, on information and belief, Porsche has refused to repair or replace the defects

**CLASS ACTION COMPLAINT**

regardless of whether they occur within or outside of the time periods covered by the manufacturer's warranties. Thus, Porsche has wrongfully and intentionally transferred the cost of repair or replacement of the Subject Components to Plaintiff and members of the Classes by fraudulently concealing the existence of the defects.

84.    Based on Porsche's representations in the USA warranty and maintenance schedules for the Macan, the Subject Components are expected to last for the useful life of the vehicle or, in the least, 160,000 miles or 12 years, without the need for repair or replacement.

85.    For example, owners and lessees of Macans are provided, concurrently with the vehicle, owner's manuals and USA Warranty and Maintenance schedules that do not show any need to inspect, maintain, or replace within the first 160,000 miles or 12 years either of the Subject Components. Indeed, the engine seals and the suspension system are entirely omitted from the maintenance schedules[5].

86.    As the USA Warranty and Maintenance pamphlet does not contain any maintenance recommendations for the Subject Components in the Macan, through and including the 160,000-mile service or 12-year mark, the same components are reasonably expected by Porsche, the proposed class representative and the proposed class members, to last the serviceable life of the vehicle that is in excess of 160,000 miles or 12 years. Despite this, the Subject Components in the Macan often fail at less than 20% of their reasonably expected useful life (meaning, within the first 32,000 miles or 2.5 years). Moreover, after experiencing a failure of either of the Subject Components, other engine components and/or suspension components, ancillary to the Subject Components, are subject to uneven wear and tear, likely resulting in early failure.

---

[5] USA Warranty and Maintenance booklets for the Macan have maintenance schedules that extend to 160,000 miles or 12 years. There is no scheduled maintenance or replacement recommended for either engine seals or suspension bushings during the entirety of this mileage or time period.

**CLASS ACTION COMPLAINT**

1

**E.    The Macan's Deceptive Moroney and Buyers Guide Stickers.**

2       87.    All Macan vehicles sold through dealerships have either a Monroney or

3   Buyers Guide window sticker affixed to a window.  Such stickers disclose the

4   existence of a vehicle's warranty and also provide other information about the

5   vehicle to consumers.

6       88.    A representative example of a Macan's window sticker appears below:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



26

27       89.    Because these stickers are affixed to the windows of the Macan,

28   purchasers and lessees are exposed to and view them.  Such window stickers are

28

misleading to consumers because they misrepresent the nature of Porsche's product.

90.    For example, the stickers disclose the purported fuel economy, horsepower, and torque of the particular Macan even though, because of the Engine Defect, the Macan will not actually be able to perform as advertised.

91.    Additionally, the stickers do not disclose that that the vehicle suffers from the Engine and Suspension Defects, creating the illusion that the Macan does not suffer from these design defects.

92.    Had Porsche wished to disclose the Engine Defect and Suspension Defect, and associated decreases in performance and fuel economy and safety hazards, it could have done so through window stickers, brochures, by requiring salespeople at its authorized dealerships to notify prospective purchasers as a condition for Porsche to continue to do business with the dealerships, and by displaying information about the defects at auto shows, including the LA Auto Show.   Plaintiff and the Classes would have necessarily been exposed to this information if Porsche had done so.

**II.  CLASS MEMBERS SUFFER DAMAGES**

93.    As a result of Porsche's misrepresentations and concealment of the Engine Leaks, Plaintiff and the Classes have suffered significant damages. These include but are not limited to significant costs incurred to repair the Engine Leaks and parts damaged by the Engine Leaks, loss of use for the vehicles over the course of the lengthy repair process, and depreciation in the value of the vehicles as a result of them suffering from the defects.

94.    Likewise, as a result of Porsche's misrepresentations and concealment of the Failing Bushings, Plaintiff and the Classes have suffered significant damages. These include but are not limited to costs incurred to repair the failing bushings, loss of use for the vehicles over the course of the repair process, and depreciation in the

**CLASS ACTION COMPLAINT**

value of the vehicles as a result of them suffering from the defect.

## III. THE CLASSES REPRESENTATIVE

### A. MR. BLAKE STANLEY

95.    In July 2023, Mr. Stanley purchased a used model year 2016 Macan S from a car dealership in California.

96.    The vehicle Mr. Stanley purchased in 2023 first entered the stream of commerce in 2015 after being sold by a Porsche franchised car dealership in Los Angeles County.

97.    Mr. Stanley had first seen the Macan at the 2013 LA Auto Show.  After seeing the Macan at the auto show, he became interested in buying a Macan at some point in the future.

98.    Prior to purchasing the Macan S, Mr. Stanley visited a Porsche dealership to look at Macans several times and spoke to the dealership's salesperson about Macans.   He had also researched the Macan online, including by visiting the Porsche website.

99.    Ultimately, Mr. Stanley opted to buy the used Macan S from a dealership.  Prior to the purchase, Mr. Stanley reviewed the original window sticker for the Macan S which would have been affixed to the vehicle when it was sold new in 2015.  The window sticker closely resembled the one above and, like the one above, listed the Macan S's horsepower, torque, and fuel economy.

100.  Throughout his ownership of the vehicle, Mr. Stanley has regularly maintained his vehicle per the recommendations of Porsche.

101.  In January 2024, Mr. Stanley took his Macan S in for an oil change at an independent mechanic.  The Mechanic informed him that there was oil leaking from his engine and that the leak appeared to be originating from where the front timing cover and front area of the valve cover met.

**CLASS ACTION COMPLAINT**

102.  Subsequently in 2024, Mr. Stanley noticed that the bushings in his front upper control arms were cracked.

103.  Concerned with the safety implications posed by the Engine Leaks and Suspension Defect, Mr. Stanley has significantly reduced his use of his Macan, only using it when necessary.

104.  In addition, Mr. Stanley is unable to obtain the advertised fuel economy, horsepower, and torque, and experiences issues related to the handling of his Macan.

105.  Given the Engine Leaks and the Suspension Defect, Mr. Stanley has suffered an ascertainable loss as a result of Porsche's omissions and misrepresentations associated with the aforementioned defects.

106.  Mr. Stanley always operated his vehicle in a reasonably foreseeable manner and as the vehicle was intended to be used.

107.  Neither Porsche, nor any of its agents, dealers, or other authorized representatives informed Mr. Stanley of the existence of the Engine Defect, Suspension Defect, the safety hazards they pose, or the attendant loss of performance, handling, horsepower, torque, and fuel economy, prior to, or any time after, his purchase.

108.  None of the advertisements reviewed or representations received by Mr. Stanley and members of the Classes contained any disclosure relating to the Engine Defect or Suspension Defect, the safety hazards they pose, or the attendant loss of performance, handling, horsepower, torque, and fuel economy in the Macan. Had Porsche disclosed that the Engine Defect and Suspension Defect would require Mr. Stanley to spend thousands of dollars to repair or replace the Subject Components, Mr. Stanley and members of the Classes would not have purchased or leased the vehicles or would have paid less for their vehicles.  Further, had Porsche disclosed that these Engine Defects and Suspension Defects posed safety hazards and resulted in loss of performance, handling, horsepower, torque, and fuel economy, Mr. Stanley and members of the Classes would not have purchased or leased the vehicles

31

**CLASS ACTION COMPLAINT**

1    or would have paid less for their vehicles.

2        109.  When Mr. Stanley and members of the Classes purchased or leased their

3    Macan, they reasonably relied on the reasonable expectation that the Macan's

4    Subject Components would last beyond the warranty periods without need for repair

5    or replacement and/or would not pose an unavoidable safety risk. Had Porsche

6    disclosed that the Subject Components were prone to premature failures and/or an

7    unavoidable safety risk, Mr. Stanley and members of the Classes would not have

8    purchased or leased the Macan or would have paid less for their vehicles.

9        110.  Before filing this lawsuit, Mr. Stanley sent Porsche a letter notifying it

10    of the Engine and Suspension defects and demanding that it correct them, but it has

11    failed to do so.

12

13                          **CLASS ACTION ALLEGATIONS**

14        111.  Plaintiff brings this action on his own behalf, and as a class action on

15    behalf of the Classes defined herein, pursuant to, and properly maintainable under

16    Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).  The Classes are also maintainable

17    as a class for declaratory and injunctive relief under Fed. R. Civ. P. 23(b)(2).  The

18    Classes consist of thousands of purchasers of the Porsche Macan line of vehicles.

19    Specifically, Plaintiff brings this suit on behalf of the following two classes:

20

21        **The Macan Suspension Defect Class**: All persons who purchased a
        Porsche Macan vehicle, other than a wholly electric Macan, regardless

22        of trim level, between January 1, 2014 and present, within California.
        The Class excludes counsel representing the Class and all persons

23        employed by said counsel, governmental entities, Ljubljana Inter Auto
        d.o.o., Porsche Cars North America, Inc, or Dr. Ing. h.c.F. Porsche AG

24        (including their officers, directors, affiliates, legal representatives,
        employees, co-conspirators, successors, subsidiaries, and assigns), any

25        judicial officer presiding over this matter, the members of their
        immediate families and judicial staff, and any individual whose interests

26        are antagonistic to other class members.

27

28

**CLASS ACTION COMPLAINT**

**The Macan Oil Leak Class**: All persons who purchased a model year 2015-2018 Porsche Macan S, GTS, or Turbo, between January 1, 2014 and present, within California. The Class excludes counsel representing the Class and all persons employed by said counsel, governmental entities, Ljubljana Inter Auto d.o.o., Porsche Cars North America, Inc, or Dr. Ing. h.c.F. Porsche AG (including their officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns), any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

112.  Plaintiff shall serve as class representative of both classes.

113.  Porsche subjected Plaintiff and the Classes to the same wrongdoing and harmed them in the same manner. Now, Plaintiff and the Classes seek to enforce the same rights and remedies pursuant to the same legal theories: violation of the Song-Beverly Consumer Warranty Act, unjust enrichment, violation of the Consumer Legal Remedies Act, and violation of the Unfair Competition Law.

114. Numerosity: The proposed classes are so numerous that individual joinder of all their members is impracticable. While the exact number and identities of the Members of the Classes are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that each class consists of thousands of members. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

115. Typicality: Plaintiff's claims are typical of the claims of the respective Classes in that his claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory as their claims.

116. Adequacy of Representation: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has further retained the

**CLASS ACTION COMPLAINT**

undersigned counsel, who have substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiff and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiff nor his counsel has any interests adverse to the Classes.

117.  <u>Superiority of Class Action and Impracticability of Individual Actions</u>: Plaintiff and the members of the Classes suffered harm as a result of Defendants' unlawful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of the Classes is impractical. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class Members. Adjudication of individual Class Members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other Class Members to protect their interests.

118. <u>Common Questions of Law and Fact Predominate</u>: In addition, the requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law and fact common to the claims of Plaintiff and of each member of the Classes and which predominate over any question of law or fact affecting only individual members of the Classes. Common questions of law and fact include, but are not limited to, the following:

**CLASS ACTION COMPLAINT**

1. Do the engines in the Porsche Macan line of vehicles suffer from defects that result in them leaking engine oil?

2. Did Porsche install a splash guard to catch oil leaks and absorb them in the Porsche Macan line of vehicles?

3. Are the front upper control arm bushings in the Porsche Macan line of vehicles unsuitable for use in the Macan such as to fail in a limited period of time?

4. Did Porsche's cost-cutting measures of utilizing Audi parts in the suspension assembly of the Porsche Macan line of vehicles damage The Macan Suspension Defect Class?

5. Are the Porsche Macan line of vehicles used or bought primarily for personal, family, or household purposes?

6. Did Porsche breach the implied warranty of merchantability with regards to Plaintiff and the Classes?

7. Did Porsche make affirmative misrepresentations to Plaintiff and the Classes with respect to the Macan's horsepower?

8. Did Porsche make affirmative misrepresentations to Plaintiff and the Classes with respect to the Macan's torque?

9. Did Porsche fraudulently conceal the Engine Defect from Plaintiff and The Macan Oil Leak Class?

10. Did Porsche fraudulently conceal the Suspension Defect from Plaintiff and The Macan Suspension Defect Class?

11. Did Porsche Violate the Song-Beverly Consumer Warranty Act?

12. Did Defendants unjustly enrich themselves at the expense of

35

**CLASS ACTION COMPLAINT**

Plaintiff and the Classes?

13. Are Plaintiff and the Classes consumers within the meaning of Civ. Code, § 1761(d)?

14. Is Porsche a person within the meaning of Civ. Code, § 1761(c)?

15. Did Porsche manufacture a good within the meaning of Civ. Code, § 1761(a)?

16. Did Porsche misrepresent the source, sponsorship, approval, or certification of the Macan?

17. Did Porsche represent that the Macan has characteristics or benefits that it does not have?

18. Did Porsche represent that the Macan is of a particular standard, quality, or grade, or of a particular style or model, when it was in fact of another?

19. Did Porsche advertise the Macan with intent not to sell them as advertised?

20. Did Porsche represent that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law?

21. Did Porsche violate the Consumer Legal Remedies Act?

22. Did Porsche engage in an unlawful business practice?

23. Did Porsche engage in a fraudulent business practice?

24. Did Porsche violate the Unfair Competition Law?

25. Are Plaintiff and the Classes entitled to compensatory

**CLASS ACTION COMPLAINT**

damages?

26. Are Plaintiff and the Classes entitled to nominal damages?

27. Are Plaintiff and the Classes entitled to punitive damages?

28. Are Plaintiff and the Classes entitled to an award of attorneys' fees?

29. Are Plaintiff and the Classes entitled to an award of Injunctive relief?

30. Does the Macan suffer from defects resulting in it not obtaining the advertised horsepower?

31. Does the Macan suffer from defects resulting in it not obtaining the advertised torque?

32. Does the Macan suffer from defects resulting in it not obtaining the advertised fuel economy?

33. Does the Engine Defect pose a safety hazard?

34. Does the Suspension Defect pose a safety hazard?

119.  Notice: Notice can be provided via internet publication, published notice and/or through mail and paid for by Defendants.

**FIRST CLAIM FOR RELIEF**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY, SONG-BEVERLY CONSUMER WARRANTY ACT (CIV. CODE § 1790, *ET SEQ.*)**

**As against Porsche**

120. The  allegations  of  paragraphs  1  through  119  are  re-alleged  and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the Classes of similarly situated Class members.

37

121. Plaintiff and the Classes bought their Macan from Porsche dealerships or from people who purchased them from Porsche Dealerships, which in turn purchased the Macan from Porsche, the manufacturer of the Macan.

122. At all relevant times, Porsche was and is in the business of selling/manufacturing the Macan.

123. The Macan was not of the same quality as those generally acceptable in the trade and was not fit for the ordinary purposes for which the goods are used because it suffered from the Engine and Suspension Defects. In addition, both defects pose a safety hazard to consumers.

124. The Macan's failure to be free of the Engine and Suspension Defects was a substantial factor in causing Plaintiff and the Classes injury and Plaintiff and the Classes are therefore entitled to damages.

125. Moreover, because Porsche willfully failed to comply with the Song-Beverly Consumer Warranty Act in misrepresenting The Macan in the manner described above, Plaintiff and the Classes are entitled to recover a civil penalty of two times their actual damages.

## SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### As against Porsche

126. The allegations of paragraphs 1 through 125 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the Classes of similarly situated Class members.

127. Porsche received a benefit in the form of revenue from the sales of the Macans that were sold to dealerships and subsequently to the Plaintiff and the Classes as well as the leases of the Macans to the Classes.

128. It is unjust for Porsche to retain the increased revenue it was able to make from the leases and sales as a result of its concealment of the Engine Defects and

38

Suspension Defects, which pose a safety hazard.  The price Plaintiff and the Classes paid to purchase or lease the Macan was a price for a vehicle without such defects, but Porsche saved money by designing and manufacturing a vehicle that suffered from such defects instead.

129.  Porsche's conduct was a substantial factor in causing Plaintiff and the Classes injury and Plaintiff and the Classes are therefore entitled to damages.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT ("CLRA"), CALIFORNIA CIVIL CODE § 1750, *ET SEQ.*
### As against Porsche

130.  The allegations of paragraphs 1 through 129 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the Classes of similarly situated Class members.

131.  Plaintiff and the Classes are consumers within the meaning of Civ. Code, § 1761(d).

132.  Porsche is a person within the meaning of Civ. Code, § 1761(c).

133.  Porsche is the manufacturer and seller to dealerships of the Macan, which constitutes a good within the meaning of Civ. Code, § 1761(a).

134.  Porsche represented the Macan's horsepower, torque, and fuel economy on the window stickers, brochures, and websites.  These representations are false because the Macan will not perform at the advertised levels.

135.  Porsche either knew that its representations were false when it made them or made the representations recklessly and without regard for their truth.

136.  Porsche intended that Plaintiff and the Classes rely on the representations.

137.  Plaintiff and the Classes reasonably relied on Porsche's representations.

138.  In addition, Porsche intentionally failed to disclose certain facts that were

39

known only to it and that Plaintiff and the Classes could not have discovered, including that the Macan suffered from the Engine Defects and Suspension Defects, and that it therefore posed a significant safety hazard to Plaintiff and the Classes.

139.  Plaintiff and the Classes did not know that the Macan suffered from the Engine Defects and Suspension Defects, or the attendant issues caused by them in terms of losing horsepower, torque, fuel economy, performance, handling, and reliability, and that the defects posed a significant safety hazard to Plaintiff and the Classes.

140.  Porsche intended to deceive Plaintiff and the Classes by concealing the facts.

141.  Had the omitted information been disclosed, Plaintiff and the Classes reasonably would have behaved differently.

142.  In engaging in the above misrepresentations and concealment, Porsche's conduct violated Civ. Code, § 1770(a) for at least the following reasons:

143.  Porsche misrepresented the source, sponsorship, approval, or certification of the Macan.

144.  Porsche represented that the Macan has characteristics or benefits that it does not have.

145.  Porsche represented that the Macan is of a particular standard, quality, or grade, or of a particular style or model, when it was in fact of another.

146.  Porsche advertised the Macan with intent not to sell them as advertised.

147.  Porsche represented that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law.

148.  As a direct and proximate result of the aforesaid conduct of Porsche, Plaintiff and the Classes have been damaged.

149.  By reason of the foregoing, Plaintiff and the Classes have been irreparably harmed, entitling them to injunctive relief, disgorgement and restitution.

40

150.  Plaintiff further seeks an injunction on behalf of himself and the Classes prohibiting Porsche from selling the Macan without disclosing to prospective purchasers that it suffers from the Engine Defects and Suspension Defects.  Plaintiff further seeks an injunction requiring Porsche to repair or replace the Subject Components in all Macans with ones that will not suffer from the Engine Defect or Suspension Defect, and/or buyback all Macans.

151.  Pursuant to §1782 of the CLRA, Plaintiff notified Porsche in writing of the particular violations of §1770 of the CLRA and demanded Porsche rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiff sent this notice by registered mail, return receipt requested, to Porsche's principal place of business.

152.  If Porsche fails to adequately respond to Plaintiff's demand within 30 days of the letter pursuant to §1782 of the CLRA, Plaintiff will amend this claim to add additional claims for relief, including claims for compensatory and exemplary damages. Plaintiff is already entitled to the relief set forth above, along with costs, attorneys' fees and any other relief which the Court deems proper.

**FOURTH CLAIM FOR RELIEF**

**VIOLATION OF THE UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200, *ET SEQ.***

**As against Porsche**

153. The allegations of paragraphs 1 through 152 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the Classes of similarly situated Class members.

154. Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

**CLASS ACTION COMPLAINT**

155.  Porsche violated the fraudulent prong because it represented the Macan's horsepower, torque, and fuel economy on the window stickers, brochures, and websites.  These representations are false because the Macan will not perform at the advertised levels.

156.  In addition, Porsche intentionally failed to disclose certain facts that were known only to it and that Plaintiff and the Classes could not have discovered, including that the Macan suffered from the Engine Defects and Suspension Defects, and that it therefore posed a significant safety hazard to Plaintiff and the Classes.

157.  Plaintiff and the Classes did not know that the Macan suffered from the Engine Defects and Suspension Defects, or the attendant issues caused by them in terms of losing horsepower, torque, fuel economy, performance, handling, and reliability, and that the defects posed a significant safety hazard to Plaintiff and the Classes.

158.  Had the omitted information been disclosed, Plaintiff and the Classes reasonably would have behaved differently and not purchased a Macan or only been willing to pay less for one.

159.  Porsche's representations and omissions were likely to deceive consumers, including Plaintiff and the Classes.  Moreover, Porsche's representations and omissions were material to the reasonable consumer, including Plaintiff and the Classes.

160.  Plaintiff and the Classes reasonably relied on Porsche's representations and omissions.

161.  As outlined in the claims for relief above, Porsche violated the unlawful prong through, among other things, its violations of the CLRA and the Song-Beverly Consumer Warranty Act.

162.  Porsche's conduct was a substantial factor in causing Plaintiff and the Classes injury and Plaintiff and the Classes are therefore entitled to damages.

163.  Plaintiff further seeks an injunction on behalf of himself and the Classes

42

prohibiting Porsche from selling the Macan without disclosing to prospective purchasers that it suffers from the Engine Defects and Suspension Defects and that they result in the Macan losing horsepower, torque, fuel economy, performance, handling, and pose a significant safety hazard to Plaintiff and the Classes.  Plaintiff further seeks an injunction requiring Porsche to repair or replace the Subject Components in all Macans with ones that will not suffer from the Engine Defect or Suspension Defect, and/or buyback all Macans.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff and the Class, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class, and Plaintiff's counsel as counsel for the Class;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Subject Components in all Macans with ones that will not suffer from the Engine Defect or Suspension Defect, and/or buyback all Macans, and/or buyback all Macans, and to fully reimburse and make whole all Class members for all costs and economic losses;

D.    Injunctive relief prohibiting Porsche from selling the Macan without disclosing to prospective purchasers that it suffers from the Engine Defects and Suspension Defects and that they result in the Macan

**CLASS ACTION COMPLAINT**

1   losing horsepower, torque, fuel economy, performance, handling, and
2   pose a significant safety hazard to Plaintiff and the Classes;
3   E.      A declaration that Defendants are financially responsible for all
4   Class notice and the administration of Class relief;
5   F.      An order awarding costs, restitution, disgorgement, punitive
6   damages[6], exemplary damages under applicable law, and compensatory
7   damages for economic loss and out-of-pocket costs in an amount to be
8   determined at trial;
9   G.      An order awarding any applicable statutory and civil penalties;
10  H.      A declaration that Defendants are required to engage in corrective
11  advertising;
12  I.      An order requiring Defendants to pay both pre-judgment and post-
13  judgment interest on any amounts awarded;
14  J.      An award of costs, expenses and attorneys' fees as permitted by
15  law; and,
16  K.      Such other or further relief as the Court may deem appropriate,
17  just, and equitable.

21  DATED: June 30, 2025                   **THE X-LAW GROUP, P.C.**

24                                         By:_____
25                                         FILIPPO MARCHINO, ESQ.,
26                                         Attorneys for Plaintiff

27  ───────────────────
[6] Plaintiff does not seek punitive damages under the law of any jurisdiction with a
split recovery punitive damages statute.

44
**CLASS ACTION COMPLAINT**

1

## JURY DEMAND

2

3          Plaintiff hereby demands a trial by jury on all issues so triable.

4

5

6    DATED: June 30, 2025              **THE X-LAW GROUP, P.C.**

7

8

9                                     By:_____
                                          FILIPPO MARCHINO, ESQ.,
10                                        Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**